**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **JOHANNE DEL CARMEN TRINIDAD-CÓRDOVA,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>Defendant. | CIVIL NO. ____________________<br><br>**RE:**<br>Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680<br><br>Personal Injuries<br><br>**NON-JURY ACTION — 28 U.S.C. § 2402** |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff Johanne del Carmen Trinidad-Córdova, through the undersigned counsel, and respectfully states, alleges, and prays as follows:

## INTRODUCTION

This is an action against the United States of America under the Federal Tort Claims Act. Plaintiff is a Court Security Officer assigned to the federal courthouse complex in Hato Rey, Puerto Rico. On April 16, 2025, in the pre-dawn darkness, while on her way to report for duty, she stepped onto a cracked and uneven section of curb at the P-1 vehicular access control checkpoint of that complex, lost her balance, and fell onto the pavement.

The defect was not new, and the United States knew about it. Thirty-six days earlier, on March 11, 2025, a Court Security Officer stationed at that same checkpoint documented the damaged, crumbling curb on a United States Marshals Service incident report. The United States did not repair it, barricade it, or warn of it. As a result of the fall, Plaintiff suffered injuries to her right shoulder, arm, hand, and knee, underwent arthroscopic surgery to her right shoulder, and was unable to perform her duties as an armed security officer for approximately nine months.

The United States cannot claim the workers' compensation immunity of a statutory employer. Independent inquiries with the Corporación del Fondo del Seguro del Estado confirmed that Plaintiff's employer, Metropolitan Security Services, Inc., has not paid its workers' compensation premiums since 2024. Its policy was cancelled with a balance owed. When Plaintiff fell, her employer was uninsured. The United States paid no premium for her coverage, directly or indirectly. As to this accident, the United States is a third party, answerable in tort like any other.

Plaintiff presented a timely administrative claim, which the General Services Administration finally denied. Plaintiff now seeks compensation in an amount not to exceed the sum certain presented in her administrative claim.

## I. JURISDICTION AND VENUE

1. This action arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1) and 2671–2680.

2. This Court has subject-matter jurisdiction under 28 U.S.C. § 1346(b)(1).

3. The acts and omissions giving rise to this action occurred in San Juan, Puerto Rico.

4. Plaintiff resides in the District of Puerto Rico.

5. Venue is proper in this District under 28 U.S.C. § 1402(b).

6. Under 28 U.S.C. § 1346(b)(1), the law of Puerto Rico governs the liability of the United States in this action.

## II. PARTIES

7. Plaintiff Johanne del Carmen Trinidad-Córdova is a natural person of legal age.

8. Plaintiff resides in Barceloneta, Puerto Rico.

9. Plaintiff is employed as a Court Security Officer by Metropolitan Security Services, Inc. d/b/a Walden Security ("Metropolitan").

10. Metropolitan is a private corporation organized under the laws of the State of Tennessee.

11. Metropolitan is registered with the Puerto Rico Department of State as a foreign corporation.

12. Metropolitan is an independent contractor of the United States.

13. Metropolitan provides court security services at the federal courthouse complex in Hato Rey, Puerto Rico, under a contract with the United States.

14. Metropolitan assigned Plaintiff to the federal courthouse complex in Hato Rey, Puerto Rico.

15. Plaintiff is not an employee of the United States.

16. Metropolitan pays Plaintiff's wages.

17. Defendant is the United States of America.

18. The United States is the proper defendant in an action under the FTCA. 28 U.S.C. § 2679(a).

19. The General Services Administration ("GSA") is an agency of the United States.

20. The United States Marshals Service ("USMS") is a component of the United States Department of Justice.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

21. Plaintiff presented a written administrative claim on Standard Form 95 for the injuries alleged in this Complaint.

22. A copy of Plaintiff's Standard Form 95 and its accompanying narrative is attached as Exhibit 1.

23. Plaintiff signed the Standard Form 95 on August 8, 2025.

24. The Standard Form 95 stated a sum certain of $500,000.00 for personal injury.

25. GSA received the administrative claim on or before September 26, 2025.

26. GSA assigned the administrative claim number LDT-1577-25-R2.

27. Plaintiff presented the administrative claim within two years after the claim accrued.

28. On January 5, 2026, GSA requested additional documentation from Plaintiff under 28 C.F.R. § 14.4(b).

29. A copy of GSA's January 5, 2026 letter is attached as Exhibit 2.

30. On January 29, 2026, Plaintiff submitted a written response and supporting documentation to GSA.

31. A copy of Plaintiff's January 29, 2026 response letter is attached as Exhibit 3.

32. On April 20, 2026, GSA issued a final written denial of the administrative claim.

33. On April 20, 2026, GSA transmitted the final denial to Plaintiff's then-counsel by e-mail.

34. On April 20, 2026, GSA sent the final denial to Plaintiff's then-counsel by certified mail.

35. A copy of GSA's final denial letter and its certified mail envelope is attached as Exhibit 4.

36. A copy of GSA's April 20, 2026 transmittal e-mail is attached as Exhibit 5.

37. Plaintiff files this action within six months after the date of mailing of the final denial. 28 U.S.C. § 2401(b).

38. Plaintiff has exhausted her administrative remedies. 28 U.S.C. § 2675(a).

## IV. FACTUAL ALLEGATIONS

### A. The Federal Complex and the P-1 Checkpoint

39. The Federico Degetau Federal Building and the Clemente Ruiz-Nazario United States Courthouse are located at 150 Carlos Chardón Avenue, Hato Rey, San Juan, Puerto Rico (together, the "Federal Complex").

40. Upon information and belief, the United States owns the Federal Complex.

41. Upon information and belief, GSA manages, operates, and maintains the Federal Complex on behalf of the United States.

42. The Federal Complex has a vehicular access control checkpoint known as "P-1."

43. The P-1 checkpoint controls vehicle access to a parking area used by judges and prosecutors.

44. A security booth stands at the P-1 checkpoint.

45. Court Security Officers staff the P-1 security booth.

46. A concrete sidewalk runs alongside the P-1 vehicular access lane.

47. The sidewalk runs between the perimeter fence of the Federal Complex and the P-1 access lane.

48. A yellow-painted concrete curb separates the sidewalk from the P-1 access lane.

49. Court Security Officers walk on the P-1 sidewalk to reach their posts at the Federal Complex.

50. Photographs of the P-1 sidewalk and curb are attached as Exhibit 6.

51. Upon information and belief, the P-1 sidewalk and curb are part of the Federal Complex.

52. Upon information and belief, on April 16, 2025, the United States, through GSA, possessed the P-1 sidewalk and curb.

53. Upon information and belief, on April 16, 2025, the United States, through GSA, controlled the P-1 sidewalk and curb.

54. Upon information and belief, GSA employees were responsible for inspecting the P-1 sidewalk and curb.

55. Upon information and belief, GSA employees were responsible for identifying hazardous conditions on the P-1 sidewalk and curb.

56. Upon information and belief, GSA employees were responsible for deciding whether to repair hazardous conditions reported at the Federal Complex.

57. Upon information and belief, GSA employees were responsible for ordering the repair of hazardous conditions reported at the Federal Complex.

58. Upon information and belief, GSA employees were responsible for verifying that ordered repairs at the Federal Complex were completed.

**B. The United States Had Notice of the Defect**

59. On March 11, 2025, at approximately 6:30 a.m., a Court Security Officer was stationed at the P-1 post.

60. That officer observed that the yellow-painted curb adjacent to the P-1 guard booth was damaged.

61. That officer observed that the curb was crumbling.

62. That officer observed a long tire mark on the damaged curb.

63. That officer documented the condition in a written Court Facility Incident Report dated March 11, 2025.

64. The Court Facility Incident Report is a form of the United States Department of Justice, United States Marshals Service.

65. That officer notified Lead Court Security Officer Lissette Ocasio of the damaged curb.

66. Upon information and belief, the March 11, 2025 report was transmitted to the USMS.

67. Upon information and belief, the damaged condition of the curb was communicated to GSA before April 16, 2025.

68. A reasonable inspection of the P-1 sidewalk in daylight would have revealed the damaged condition of the curb.

69. Thirty-six days elapsed between the March 11, 2025 report and Plaintiff's fall.

70. The United States did not repair the damaged curb before April 16, 2025.

71. The United States did not barricade the damaged curb before April 16, 2025.

72. The United States did not place a warning sign at the damaged curb before April 16, 2025.

73. The United States did not mark the damaged area of the curb as a hazard before April 16, 2025.

**C. The Fall**

74. On April 16, 2025, Plaintiff was scheduled to report for duty at 5:30 a.m.

75. On April 16, 2025, Plaintiff arrived at the Federal Complex to report for duty.

76. Plaintiff entered the Federal Complex through the P-1 vehicular access control checkpoint.

77. Plaintiff was lawfully on the premises of the Federal Complex.

78. At approximately 5:02 a.m., Plaintiff was walking on the P-1 sidewalk.

79. It was dark at that hour.

80. The P-1 sidewalk was poorly lit at that hour.

81. The damaged section of the curb was cracked.

82. The crack created an uneven walking surface.

83. The uneven surface was not readily visible to a pedestrian walking on the P-1 sidewalk in the lighting conditions present at that hour.

84. No warning sign, barricade, cone, or marking alerted pedestrians to the uneven surface.

85. Plaintiff did not see the uneven surface before she stepped on it.

86. Plaintiff's right foot stepped on the cracked and uneven section of the curb.

87. Plaintiff lost her balance.

88. Plaintiff fell onto the pavement.

89. Upon information and belief, Plaintiff fell at the same damaged section of curb documented in the March 11, 2025 report.

90. The Court Security Officer on duty documented Plaintiff's fall in a USMS Court Facility Incident Report dated April 16, 2025.

91. That report records that Plaintiff fell at the damaged, crumbling curb of the P-1 sidewalk.

92. The incident was reported to Court Security Officer Intermediate Supervisor José Rivera.

93. Emergency medical technicians attended Plaintiff at the scene.

94. An ambulance transported Plaintiff to the Río Piedras Medical Center.

**D. Plaintiff's Injuries and Treatment**

95. On April 16, 2025, Plaintiff was treated at the emergency department of the Puerto Rico Medical Services Administration.

96. Plaintiff arrived at the emergency department with trauma to her right shoulder.

97. Emergency physicians ordered radiographs of Plaintiff's right shoulder, humerus, elbow, forearm, wrist, hand, and knee.

98. The emergency physician diagnosed a contusion of the right shoulder.

99. The emergency department administered oxycodone-acetaminophen to Plaintiff for pain.

100. Plaintiff then received medical treatment through the Corporación del Fondo del Seguro del Estado ("CFSE").

101. A certified copy of Plaintiff's medical record from the CFSE Industrial Hospital is attached as Exhibit 7.

102. Exhibit 7 includes Plaintiff's emergency department records, radiology reports, MRI report, and operative report.

103. On April 22, 2025, a CFSE physician evaluated Plaintiff for pain in the right shoulder.

104. On April 22, 2025, CFSE placed Plaintiff on rest from work.

105. On April 23, 2025, Plaintiff underwent a magnetic resonance imaging study of her right shoulder.

106. The MRI showed a full-thickness tear of the supraspinatus tendon measuring up to 31 by 19 millimeters.

107. The MRI also showed tendinosis of the subscapularis tendon.

108. The MRI also showed tenosynovitis of the biceps tendon.

109. Before April 16, 2025, Plaintiff had no prior injury to her right shoulder.

110. Before April 16, 2025, Plaintiff performed the full duties of an armed Court Security Officer.

111. On May 19, 2025, orthopedic surgeon Dr. Ariel Chacón Balado operated on Plaintiff's right shoulder at the CFSE Industrial Hospital.

112. The surgery included an arthroscopic repair of the right rotator cuff.

113. The surgeon implanted anchors in Plaintiff's right shoulder.

114. The surgery included a biceps tenodesis.

115. After surgery, Plaintiff received postoperative care through CFSE.

116. CFSE kept Plaintiff on rest from work, through successive determinations, until January 18, 2026.

117. Copies of CFSE's rest determinations are attached as Exhibit 8.

118. Copies of Plaintiff's CFSE follow-up appointment records are attached as Exhibit 9.

119. Copies of Dr. Chacón Balado's special medical reports are attached as Exhibit 10.

120. On September 9, 2025, Dr. Chacón Balado certified that Plaintiff could not return to full, unrestricted security duties.

121. On September 9, 2025, Dr. Chacón Balado certified that Plaintiff could not physically subdue an attacker.

122. On September 9, 2025, Dr. Chacón Balado certified that Plaintiff could not physically control violent or unruly crowds.

123. A copy of Dr. Chacón Balado's September 9, 2025 certification on USMS Form CSO-012 is attached as Exhibit 11.

124. On January 28, 2026, the USMS reviewing medical officer deferred Plaintiff's medical qualification to return to duty.

125. A copy of the January 28, 2026 Medical Review Form is attached as Exhibit 12.

126. Plaintiff was not medically cleared to resume Court Security Officer duties until on or about January 30, 2026.

127. Photographs of Plaintiff's right shoulder after surgery are attached as Exhibit 13.

128. At the time of the fall, Plaintiff earned $21.32 per hour.

129. Plaintiff lost wages while she was unable to work.

130. Plaintiff suffered physical pain as a result of the fall.

131. Plaintiff suffered physical pain as a result of the surgery and her recovery from it.

132. Plaintiff suffered mental anguish as a result of her injuries.

133. Plaintiff suffered mental anguish from her prolonged inability to work.

134. Plaintiff has permanent damage to her right shoulder.

135. Plaintiff's permanent damage includes limitations in the movement of her right shoulder.

136. The detailed parameters of Plaintiff's permanent damage will be determined in the near future through an expert witness.

**E. Metropolitan Was an Uninsured Employer, and the United States Is a Third Party**

137. Metropolitan reported Plaintiff's accident to CFSE on April 22, 2025.

138. In its report, Metropolitan identified its employer number as 62-1448519.

139. In its report, Metropolitan identified a CFSE policy number 19600503.

140. A copy of Metropolitan's work accident report to CFSE, with Fed. R. Civ. P. 5.2 redactions, is attached as Exhibit 14.

141. Through independent inquiries with CFSE, Plaintiff obtained CFSE's policy records for Metropolitan.

142. A copy of the CFSE policy records that Plaintiff obtained is attached as Exhibit 15.

143. CFSE's records identify Metropolitan by employer number 621448519.

144. CFSE's records identify Metropolitan's policy as number 1612001347.

145. CFSE's records show that Metropolitan paid only half of its premium for the policy period from July 22, 2022 through June 30, 2023.

146. CFSE's records show an unpaid balance of $46,726.46 for that period.

147. CFSE's records show that Metropolitan paid nothing for the policy period from October 1, 2023 through June 30, 2024.

148. CFSE's records show an unpaid balance of $23,363.25 for that period.

149. CFSE's records show that Metropolitan's policy was cancelled.

150. CFSE's records show no premium payment by Metropolitan for any policy period after June 30, 2023.

151. Metropolitan has not paid any CFSE premium since 2024.

152. On April 16, 2025, Metropolitan had no CFSE policy in force.

153. On April 16, 2025, Metropolitan was not an insured employer under the Puerto Rico Workers' Accident Compensation Act, P.R. Laws Ann. tit. 11, § 1 et seq.

154. On April 16, 2025, Metropolitan was an uninsured employer under that Act.

155. The United States did not pay any CFSE premium for Plaintiff's coverage.

156. Upon information and belief, the United States did not reimburse Metropolitan for any CFSE premium.

157. The United States did not pay, directly or indirectly, for Plaintiff's workers' compensation coverage.

158. The United States was not Plaintiff's employer.

159. The United States was not Plaintiff's statutory employer.

160. The United States is not entitled to the employer immunity provided by Article 20 of the Puerto Rico Workers' Accident Compensation Act, P.R. Laws Ann. tit. 11, § 21.

161. As to Plaintiff's accident, the United States is a third party within the meaning of Article 31 of the Puerto Rico Workers' Accident Compensation Act, P.R. Laws Ann. tit. 11, § 32.

162. Under Article 31 of that Act, an injured worker may sue a third party who caused her injury.

## V. CAUSE OF ACTION — FEDERAL TORT CLAIMS ACT

## (28 U.S.C. §§ 1346(b)(1), 2671–2680)

163. Plaintiff incorporates the preceding paragraphs by reference.

164. Plaintiff's sole claim is against the United States under the FTCA.

165. Under 28 U.S.C. § 1346(b)(1), the United States is liable for the negligent acts and omissions of its employees acting within the scope of their employment, under circumstances where a private person would be liable in accordance with the law of the place where the act or omission occurred.

166. The acts and omissions alleged in this Complaint occurred in Puerto Rico.

167. Under the law of Puerto Rico, a person who causes damage to another through fault or negligence must repair the damage. P.R. Laws Ann. tit. 31, § 10801.

168. Under Puerto Rico law, a private owner or possessor of premises owes persons lawfully on those premises a duty to keep the premises in a reasonably safe condition.

169. Under Puerto Rico law, that duty requires the owner or possessor to remedy, or warn of, dangerous conditions that it knows of or should know of in the exercise of reasonable care.

170. A private person in like circumstances would be liable to Plaintiff under the law of Puerto Rico.

171. The United States is liable to Plaintiff in the same manner and to the same extent as a private person under like circumstances. 28 U.S.C. § 2674.

172. The United States had actual notice of the damaged curb through the March 11, 2025 report.

173. The United States had constructive notice of the damaged curb.

174. The damaged condition of the curb existed long enough to be discovered and repaired through reasonable inspection.

175. GSA employees, acting within the scope of their federal employment, failed to repair the damaged curb within a reasonable time after notice.

176. GSA employees, acting within the scope of their federal employment, failed to barricade the damaged curb.

177. GSA employees, acting within the scope of their federal employment, failed to warn persons using the P-1 sidewalk of the damaged curb.

178. GSA employees, acting within the scope of their federal employment, failed to reasonably inspect the P-1 sidewalk and curb.

179. GSA employees, acting within the scope of their federal employment, failed to act on the report of the damaged curb.

180. In the alternative, upon information and belief, USMS employees, acting within the scope of their federal employment, failed to transmit the report of the damaged curb to the persons responsible for its repair.

181. The repair of a known, broken curb on a pedestrian walkway is a routine maintenance task.

182. The repair of a known, broken curb on a pedestrian walkway does not involve the weighing of social, economic, or political policy.

183. The negligent acts and omissions of federal employees were the proximate cause of Plaintiff’s fall.

184. The negligent acts and omissions of federal employees were the proximate cause of Plaintiff’s injuries and damages.

## VI. DAMAGES

185. Plaintiff incorporates the preceding paragraphs by reference.

186. As a proximate result of the negligence of the United States, Plaintiff has suffered physical pain and suffering.

187. As a proximate result of the negligence of the United States, Plaintiff has suffered mental and emotional anguish.

188. As a proximate result of the negligence of the United States, Plaintiff has lost income.

189. As a proximate result of the negligence of the United States, Plaintiff has suffered loss of enjoyment of life.

190. As a proximate result of the negligence of the United States, Plaintiff has suffered permanent damage to her right shoulder, including movement limitations.

191. Plaintiff's damages exceed $75,000.00, exclusive of interest and costs.

192. Plaintiff's total claim in this action does not exceed $500,000.00, the sum certain presented in her administrative claim. 28 U.S.C. § 2675(b).

## VII. TRIAL BY THE COURT

193. Under 28 U.S.C. § 2402, this action against the United States shall be tried by the Court without a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against the United States of America, and award her:

(a) compensatory damages for physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, and permanent damage to her right shoulder;

(b) compensatory damages for lost income;

(c) a total award not to exceed $500,000.00;

(d) costs under 28 U.S.C. § 2412(a); and

(e) any other relief that is just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 11th day of October, 2026.

**A. BRITO LAW & CONSULTING, LLC**
1607 Ave. Ponce de León, Suite GM6 #232
San Juan, Puerto Rico 00909
Tel. (787) 568-8121

s/ Adrián Brito Rodríguez
**ADRIÁN BRITO RODRÍGUEZ**
USDC-PR Bar No. 307304
adrian@brito.legal

*Counsel for Plaintiff*